# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACI FENDLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:11-cv-00868-AKK** |
| **PCH HOTELS AND RESORTS,** | ) | |
| **INC. d/b/a Renaissance Ross** | ) | |
| **Bridge Gold & Spa Resort,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Traci Fendley ("Fendley") filed this action on March 3, 2011, on behalf of herself and others similarly situated, alleging violations of the FLSA. Doc. 35. Fendley seeks unpaid overtime compensation, liquidated damages, attorneys' fees, costs, disbursements, and interest. *Id*. at 9. The court has for consideration Fendley's Motion to Facilitate Court-Approved Notice Under 29 U.S.C. § 216(b), doc. 17,[1] which is fully briefed, docs. 23 & 28. In its discretion, and, after considering the parties' submissions, the court **GRANTS** Fendley's motion.

---

[1] On February 10, 2012, Fendley amended her Complaint to add Robert Scott, Jr. ("Scott") as an additional Plaintiff. Doc. 35.

## I. CONDITIONAL CLASS CERTIFICATION STANDARD OF REVIEW

Section 216(b) of the Fair Labor Standards Act ("FLSA") authorizes actions for unpaid overtime compensation against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Further, would-be plaintiffs in a section 216(b) collective action must affirmatively "opt-in" to the suit.[2] 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who wants to join must affirmatively consent to be a party and file written consent with the court." *Morgan*, 551 F.3d at 1259. The FLSA does not provide specific procedures by which potential plaintiffs may opt-in, but the Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to

---

[2] In this way, section 216(b) collective actions differ from Fed. R. Civ. P. 23 class actions because under Rule 23, a person must affirmatively "opt out" if he or she wishes to abstain from the lawsuit. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169

(1989). *See also Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983).

Indeed, the Supreme Court has endorsed the practical benefits of FLSA collective

actions, as follows:

> A collective action allows . . . plaintiffs the advantage of
> lower individual costs to vindicate rights by the pooling
> of resources.  The judicial system benefits by efficient
> resolution in one proceeding of common issues of law
> and fact arising from the same alleged discriminatory
> activity.  These benefits, however, depend on employees
> receiving accurate and timely notice concerning the
> pendency of the collective action, so that they can make
> informed decisions about whether to participate.

*Hoffman-La Roche*, 493 U.S. at 170.

The Eleventh Circuit has suggested a two-tiered process for district courts

to manage collective actions.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208,

1218-19 (11th Cir. 2001).[3]  At the first stage, called conditional certification or the

"notice" stage, the district court makes a determination, based on the pleadings

and affidavits on file, of whether it should authorize notice of the action to

potential class members.  *Id.* at 1218.  Because the court has minimal evidence, the

standard is lenient.  *Id.*  The district court must merely ascertain whether there are

---

[3]Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act, the same analysis applies to FLSA collective actions.  *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

other employees who wish to opt-in, and that they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan,* 551 F.3d at 1259 (quoting *Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  Indeed, this inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218.  If the court conditionally certifies a class, court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to opt-in to the action.  *Id.*

The second stage of the process is activated by the defendant's filing of a decertification motion following the completion of discovery.  *Id.*  At this stage, based on a fully-developed record, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated.  *Id.*  The plaintiff has a heavier burden to show similarity at the second stage.  *Morgan*, 551 F.3d at 1261. If the court finds the plaintiffs are not similarly situated, it decertifies the action, dismisses the opt-in plaintiffs without prejudice, and the named plaintiffs proceed to trial on their individual overtime claims.  *Hipp*, 252 F.3d at 1218.  At all times, the decision to certify an opt-in class under section 216(b) "remains soundly within the discretion of the district court."  *Id.* at 1219.

4

## II. FACTUAL AND PROCEDURAL BACKGROUND

PCH Hotels and Resorts, Inc. ("Defendant") is a hotel management company that operates the Renaissance Ross Bridge Resort ("Ross Bridge") in Hoover, Alabama, where it employs individuals in approximately 73 different hourly, non-exempt classifications, including: front desk, maintenance, housekeeping, engineering, accounting, laundry, spa, loss prevention, and administrative. Doc. 23-1 at 2-3. Under Defendant's policy, any hourly employee who works at least a six-hour shift must take a 30-minute meal break, which Defendant deducts automatically from the employee's paycheck. Doc. 23-1. Defendant informs employees of the 30-minute meal break deduction during orientation and through the employee handbook. *Id.* at 3-4. Furthermore, allegedly, Defendant also instructs employees at orientation to use a missed meal break form (the "Form") to report instances when they worked during their meal breaks, so that their pay accurately represented actual hours worked. *Id.* Allegedly, Defendant informs employees that they can obtain the Forms:

- inside the Human Resources office (from any Human Resources personnel);
- outside the Human Resources office in a forms rack, which is accessible to all employees 24 hours a day;
- on clearly marked shelves behind the front desk (a few steps away from Fendley's work area);
- on the shared drive computer system accessible by all employees

5

who have an email account with Ross Bridge; and
• on the Associate Internet portal, which all employees can access at
work, at home, or anywhere they have access to the internet.

*Id.* at 4.  Employees must obtain pre-approval from a manager or supervisor to

work overtime; failure to do so can result in disciplinary action.  Doc. 19-15 at 3.

Defendant also expects employees to submit the Forms to their supervisor,

manager, or to Human Resources.  *Id.* at 3.

### A.    Traci Fendley

Fendley worked for Ross Bridge from September 28, 2010, until May 14,

2011, as a night auditor from 10:30 p.m. to 7:00 a.m. and sometimes from 2:30

p.m. to 11:00 p.m. *Id.*  Initially, Fendley worked with another night auditor, but

after November 12, 2010, Fendley frequently worked alone.  *Id*. at 7.  Fendley

contends she often did not take a full meal break either because she was too busy

or had no one to relieve her.  Doc. 19-1 at 3.  Apparently, Defendant expected

valet attendants or loss prevention employees, whom it claims it adequately

trained, to relieve Fendley for her scheduled break.  Doc. 23-1 at 5.  Fendley,

however, alleges that valet attendants and loss prevention employees lacked the

necessary qualifications to perform her duties and that, as a result, she frequently

had to work through her break.  Doc. 19-1 at 4.

Allegedly, Fendley complained on several occasions to her supervisor,

6

Jason Henderson, and to Melina Porche in Human Resources about the automatic 30-minute deductions from her paycheck for breaks she never took and claims that management labeled her as too "outspoken" as a result. *Id.* at 3-4. Despite working through her breaks, Fendley failed to submit Forms for the first five months of her employment because she purportedly did not have access to a Form. Doc. 23-1 at 6. Allegedly, Defendant only provided Fendley the  Form to document her missed meal breaks during the week of February 20, 2011. Doc. 19-1 at 4. Thereafter, on February 28, 2011, Fendley provided Defendant a Form listing 45 days she allegedly worked during her break without compensation. Doc. 23-1 at 6-7. On March 17, 2011, Defendant paid Fendley for 42 of the 45 missed meal breaks.[4] *Id*. at 7.

When she filed this motion, Fendley claimed Defendant paid her only the straight time wage and still owed her the overtime premium. Doc. 19-1 at 5. However, in her subsequent response to Defendant's summary judgment motion, Fendley conceded that Defendant paid her the *full* amount, including the overtime premium. Doc. 30 at 4-6. Still, Fendley contends that she has the right to pursue this lawsuit because she is entitled to liquidated damages. *Id.*

---

[4] Fendley included three days on the Forms that she did not actually work.

**B.     Opt-In Plaintiffs**

On July 29, 2011, Fendley filed a proposed notice for potential class

members, which clarified that Fendley is seeking to certify an opt-in class of

plaintiffs ("opt-in plaintiffs") defined as follows:

> All present and former hourly employees . . . who were employed in
> Alabama, and who were not paid 1.5 times their regular hourly rates
> for <u>all</u> hours worked over forty in <u>any</u> week from March 3, 2008 to
> the present.

Doc. 17-1 at 2.  That same day, Fendley filed a Motion for Conditional Class

Certification and submitted fourteen declarations, including her own, in support of

her motion.  *See* docs. 19-1 to 19-14.  The opt-in plaintiffs consist of current and

former hourly non-exempt employees who allegedly worked forty hours or more

in one or more work weeks, and who contend Defendant failed to pay them

overtime wages.  *Id.*  The opt-in plaintiffs worked all three shifts and held a

variety of positions, including: audit clerk, loss prevention/security, banquet

server, buffet attendant, night auditor, in room dinning server, bellman, and

clubhouse server.  *See id.*

### III.  ANALYSIS

Presently, Fendley seeks conditional certification and judicial approval of a

proposed notice to potential members.  As such, Fendley's burden hinges on her

ability to show that she and the prospective opt-in plaintiffs are "similarly situated." *Morgan*, 551 F.3d at 1259 (citation omitted). The FLSA does not define "similarly situated," *see* 29 U.S.C. § 216(b), and while the Eleventh Circuit has refused to adopt a precise definition, *see Morgan*, 551 F.3d at 1259, it has provided some guidance. It is clear that to maintain a FLSA collective action, the named plaintiff or plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K-Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996). Yet, the "similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). "Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Id.* (citation omitted). Essentially, a plaintiff must demonstrate a "reasonable basis" for his claim of class-wide discrimination. *Grayson*, 79 F.3d at 1097. This burden, "which is not heavy,[5] [is met] by making substantial allegations of class-wide discrimination, that is, detailed allegations

---

[5]Indeed, the Eleventh Circuit has also described plaintiff's burden of showing a similarly situated class at this initial stage of the litigation as "'not particularly stringent,' 'fairly lenient,' 'flexib[le],'. . . and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Morgan*, 551 F.3d at 1260-61 (citations omitted).

supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (citation omitted). *See also Morgan*, 551 F.3d at 1261 ("The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion. Nonetheless, there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores.'") (citation omitted).

## A.  Evaluation of Fendley's Motion for Conditional Class Certification

### 1.  *Fendley's Showing of Others Similarly Situated and a Desire to Opt-In*

Fendley contends that conditional certification is appropriate because she has established that other employees desire to opt-in and that they are similarly situated to her, i.e., Defendant refused to pay Fendley and the opt-in plaintiffs for the overtime hours they incurred as a result of working through their meal breaks. Doc. 35 at 6-7.  Furthermore, Fendley contends she and the opt-in plaintiffs are also similarly situated because they are entitled to liquidated damages. *Id.* at 9. To support her contentions, Fendley submitted fourteen declarations, which generally show the following:

Fendley and the opt-in plaintiffs are current or former hourly paid,

10

nonexempt employees, who worked off the clock during work weeks where they worked forty hours or more from March 3, 2008, to the present.  Docs. 19-1 to 19-14.  Fendley and the opt-in plaintiffs allege they worked through unpaid meal breaks due to understaffing, the workload, having no one to relieve them, and Defendant's requirements to put customers first.  *Id.*  Fendley and the opt-in plaintiffs contend they complained to no avail to their respective supervisors and that their supervisors told them that company policy mandated an automatic deduction of 30 minutes each day for meal breaks.  *Id.*  Additionally, Fendley and the opt-in plaintiffs contend Defendant failed to make the Forms to report the missed breaks readily available.  Allegedly, (1) Fendley only gained access to a Form on February 20, 2011, doc. 19-1 at 4; (2) Defendant told one opt-in plaintiff it no longer printed the Forms and that it had a policy to automatically deduct the 30 minutes each day regardless of whether the employee took the meal break, doc. 19-14 at 3; and (3) management told another that she "was fortunate to have a job with the economy as it is, and that [she] should not complain," doc. 19-10 at 4.

Under a reasonable view of Fendley's evidence, the court finds that Fendley has demonstrated sufficiently that there are others who are similarly situated to her, insofar as they were or are all subject to Defendant's alleged unified practice of not paying employees overtime for working during their meal breaks.

Moreover, the declarations provide evidentiary support for the proposition that Fendley and the opt-in plaintiffs complained repeatedly to their supervisors about working through their meal breaks. *See Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003) ("a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions"). Further, Fendley has shown that similarly situated individuals wish to join the litigation through the filing of thirteen declarations, even though the court has not approved or provided notice. *See e.g., Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (affidavit from one other co-worker insufficient to demonstrate the existence of desire to opt-in and the indication increases with the submission of additional affidavits); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (conditionally certified a nation wide collective action based on two plaintiffs and declarations from four employees); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1316 (M.D. Ala. 2002) (three employees sufficient for state-wide certification). Therefore, Fendley has met her exceedingly light burden.

### 2.    *Consideration of Defendant's Evidence to the Contrary*

To try to defeat conditional certification, Defendant asserts initially that the declarations Fendley and the opt-in plaintiffs signed are "[t]oo [r]eplete with [i]naccuracies to be [c]onsidered [c]ompetent [e]vidence," doc. 23 at 16, that it can prove false the factual statements contained in the declarations by a simple review of employment payroll records, *id.* at 18, and that the "factual misstatements contained in the declarations submitted to this Court undermine the legitimacy of Plaintiff's motion," doc. 23 at 17.  To support these contentions, Defendant claims that although seven opt-in plaintiffs assert in their declarations that they did not fill out any missed meal break Forms, these seven, in fact, did so and requested that Defendant pay them for working through their meal breaks.  *Id.*  Furthermore, Defendant claims that while opt-in plaintiff Brandon Davis denied filling out Forms for missed meal breaks, he signed multiple Forms approving payment of missed breaks for his subordinates in his capacity as restaurant manager.  *Id.*; *see* doc. 19-6 at 2.  Finally, Defendant contends that although opt-in plaintiff Minnie Kendrick ("Kendrick") claimed that Defendant failed to compensate her despite submitting a Form, Defendant actually paid Kendrick for all missed meal breaks. *Id*.

Defendant's arguments are premature at this initial notice stage where this

court's only task is to determine if there are similarly situated individuals who desire to opt-in.  Critically, this court must refrain from making merit decisions at the certification stage.  *See Hoffman-La Roche*, 493 U.S. at 174 (cautioning that district courts, in exercising their discretion to facilitate FLSA notice, "must take care to avoid even the appearance of judicial endorsement of the merits of the action"); *Longcrier*, 595 F. Supp. 2d at 1241 ("To the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate.") (citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008)) ("whether at the first or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim.  That is, plaintiffs do not have to show that the employer actually violated the FLSA."); *Lynch v. United States Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated").  In other words, it is simply inappropriate and premature to make merit determinations at this juncture, and, accordingly, the court declines to do so.

Next, Defendant contends Fendley failed to make a *prima facie* showing that the case can proceed as a collective action.  Doc. 23 at 19.  Specifically, Defendant asserts that Fendley has not presented any evidence of a unified policy,

plan or scheme, to deny overtime pay for meal breaks. *Id.* In fact, Defendant contends further it has a documented and well-communicated policy to pay hourly employees who miss their meal breaks, which it set forth in its handbook. *Id.* at 20. Consequently, Defendant contends that "[Fendley] and [the] putative Opt-In Plaintiffs cannot establish the right to proceed collectively as a result of a unified plan or practice to deny them overtime because" Defendant made available the missed meal Forms to employees in numerous locations, doc. 19-1 to 19-14; doc 23 at 6, 21.

Defendant overlooks, however, that the Eleventh Circuit has twice confirmed that "a unified policy, plan or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Hipp*, 252 F.3d at 1219. Moreover, the record here is sufficient to establish an alleged unified plan or practice. Specifically, Fendley and the majority of the opt-in plaintiffs attest that they complained unsuccessfully on several occasions to supervisors and managers about the failure to pay them for working through their meal breaks. *See* docs. 19-1 to 19-14, ¶13. Furthermore, Fendley contends Defendant failed to make the Forms readily available and that Defendant finally gave her one on February 20, 2011. Doc. 19-1 at 4. Likewise, opt-in plaintiff Natarra Waters contends that when she requested

a Form, she was told "we do not print them anymore."  Doc. 19-14 at 3.  Such

testimony is sufficient evidence at this stage to establish the existence of an

alleged uniform policy to undercount Fendley and opt-in plaintiffs' overtime

hours.

Defendant argues next that since there is no evidence of a common policy to

violate the FLSA, Fendley must at least "present some evidence of commonality

between her meal break overtime claim and the claims of the other individuals she

seeks to represent . . . ."  Doc. 23 at 22.  However, again, "a unified policy . . . may

not be required to satisfy the more liberal 'similarly situated' requirement of §

216(b)."  *Grayson*, 79 F.3d at 1095.  In any event, Defendant contends that the

commonality does not exist here because a detailed plaintiff-by-plaintiff analysis

is necessary to determine whether the opt-in plaintiffs can recover overtime pay

for missed breaks.  Doc. 23 at 29.  To this end, Defendant offers evidence which it

contends shows that Fendley and the opt-ins are not similarly situated, i.e., (1)

Fendley performed different job duties and had a different supervisor than all but

one opt-in, (2) Fendley had a significantly different claimed reason for missing

breaks than the potential class she seeks to represent, and (3) Defendant paid

Fendley for all the breaks she allegedly missed.  *Id.*  However, as shown below,

Defendant's arguments fall short at this initial stage of conditional certification.

### a. **Differences in Job Titles, Duties, Shift, and Supervision**

First, Defendant contends that "[Fendley's] job title, duties and shift were different than all but one opt-in plaintiff," Katrina Eto, a night auditor, whom Defendant contends it paid for all meal breaks before Eto resigned.  Doc. 23 at 23. Therefore, Defendant contends the majority of the opt-in plaintiffs are not similarly situated to Plaintiff since they worked primarily in food preparation and/or food services and worked during the day, *see* docs. 19-2 to 19-14, ¶¶ 3-5, unlike Fendley who worked the night shift from 10:30 p.m. until 7:00 a.m. primarily, doc. 19-1 at 2.  This argument overlooks that the Eleventh Circuit has stated "that under § 216(b), courts determine whether employees are similarly situated – not whether their positions are identical."  *Morgan*, 551 F.3d at 1260. Therefore, it is unnecessary for Fendley to have performed the same job and worked the same hours as the opt-in plaintiffs.  Moreover, the 30-minute deduction applied to all non-exempt employees, regardless of position or shift.  In other words, Fendley and the opt-in plaintiffs are complaining about the same issue – i.e., Defendant's alleged failure to pay overtime for missed meal breaks during weeks where they worked 40 or more hours.  As such, they have established at this juncture that they are similarly situated.

As to Defendant's contention that Fendley is not similarly situated because

"[Fendley] had a different supervisor/decisionmaker than all but one Opt-In Plaintiff[,]"[6] doc. 23 at 24, this argument also misses the mark.  Defendant alleges that the role of supervisor is important because a supervisor or manager had to approve the Form before sending it to payroll for processing.  Doc. 23 at 24. Defendant's argument may have carried the day if Fendley and the opt-in plaintiffs maintain that despite submitting their Forms, their supervisors denied them compensation.  However, only one opt-in plaintiff, Minnie Kendrick, makes such an assertion.  *See* doc. 19-10 at 4. The rest allege that: (1) Defendant failed to make the Forms easily accessible, (2) a manager stated that Defendant no longer printed the Forms, and (3) they complained repeatedly and unsuccessfully about the refusal to compensate them for missed meal breaks.  *See* docs. 19-1 to 19-9 and 19-11 to 19-14.  In light of these allegations, differences in supervision do not matter in the similarly situated analysis especially where, as here, Plaintiffs maintain that Defendant purportedly had an overall policy to deny compensation for missed breaks that it applied across-the-board.

### b. Differences in Reasons for Missing Meals

Defendant asserts next that Fendley is not similarly situated to the opt-in

---

[6] Only some opt-in plaintiffs listed their supervisors in their declarations, *see* docs. 19-11, 19-13 to 19-14.

plaintiffs because "allegations relating to her meal break pay claims are very different than those of the Opt-in Plaintiffs" and that Fendley's reasons for why she missed meal breaks are significantly different as well, i.e., Fendley missed her meal breaks because she did not want to use loss prevention employees or valets to relieve her, whereas, the opt-in plaintiffs allegedly missed their breaks for entirely different reasons – understaffing, time constraints of setting up for a banquet, too busy preparing meals or fulfilling room service orders.  Docs. 19-2 to 19-14; doc. 23 at 26.  To support this argument, Defendant cites *Brooks v. BellSouth Commc'ns*, 2009 U.S. Dist Lexis 20552, *26 (N.D. Ga. Feb. 10, 2009), for the proposition that "the court denied conditional certification of collective action involving claims of missed meal breaks where 'all of Plaintiffs' declarations have varying theories of how or why they were deprived of payment for overtime work." Doc. 23 at 27.   However, *Brooks* is distinguishable because, here, the opt-in plaintiffs do not have varying theories of how Defendant deprived them of payment for overtime. While they have various reasons for why they missed their breaks, they all contend that they did not receive overtime pay because Defendant had "a common policy and practice of 'off the clock' work during unpaid meal breaks that resulted in a consistent underpayment of overtime hours."  Doc. 18 at 13.  Therefore, *Brooks* does not preclude Fendley and the opt-in plaintiffs from

establishing that they are similarly situated.

### c. Differences in Entitlement to Overtime

Finally, Defendant contends that Fendley is not similarly situated to the opt-in plaintiffs because it paid Fendley for her missed meal breaks.  Doc. 19-1 at 5.  While it is true that Defendant paid Fendley, this contention overlooks that Fendley is claiming that she and the opt-in plaintiffs are entitled to liquidated damages due to Defendant's alleged willful violation of the FLSA.  Doc. 35 at 9. In other words, Defendant has technically not made Fendley whole for the alleged violation of her FLSA rights.  Consequently, Fendley and the opt-in plaintiffs are still similarly situated because Defendant subjected them to the same alleged conduct and if, in fact, Defendant willfully violated the FLSA, Fendley and the opt-in plaintiffs may be entitled to liquidated damages.

### IV.  CONCLUSION

Whether Fendley and the opt-ins can survive a motion for decertification or prevail on the merits are matters that are not before this court at this juncture. Rather, the court is tasked solely with ascertaining whether Fendely has satisfied her minimal burden at this notice stage of the proceedings – i.e., whether she can show that there are other employees who wish to opt-in and that these individuals are similarly situated.  Fendley has made such a showing and has satisfied her

burden.  *See Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D.

Ga. 2008) ("Where a plaintiff has demonstrated a reasonable basis for the

allegations of the complaint by filing declarations and consents from class

members, a collective action is authorized, and notice should be issued.") (citing

*Grayson*, 79 F.3d at 1097).  Therefore, the court **GRANTS** Fendley's motion for

conditional class certification and notice.[7]  To facilitate the provision of notice,

Defendant is **ORDERED**, within forty-five (45) days from the date of this order,

to provide to Fendley's counsel in a mutually agreeable format a list containing

the names and current or last known addresses of all current and former

nonexempt employees whom Defendant employed at any time between March 3,

2008, and the filing of the Complaint on March 3, 2011.

    **DONE** this 26th day of March, 2012.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[7] Defendant offered no opposition to the proposed language in Fendley's Notice of Right to Opt-In to Lawsuit, doc. 17-1. Therefore, Fendley is free to send her notice to Defendant's former and current employees.

21